## MAYER v. PENFIELD.

(Supreme Court, Appellate Division, First Department. April 12, 1912.)

Brokers (§ 71*)—Contract for Compensation—Consideration.

On November 12th a broker secured a purchaser, and a contract was prepared, acceptable to the owner, and by which he was to receive $2,-500 on closing, and it was agreed on November 16th that the broker should receive $1,000 for his services. On November 22d the purchaser's officers authorized the contract, and on November 23d the owner requested the broker to see the officers, stating that if he would close the matter on the following Monday and secure the first payment he would give the broker $3,000, instead of $1,000. *Held* that, as nothing remained to be done except the formal execution of the contract, there was no consideration for the last agreement as to the services.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 56; Dec. Dig. § 71.*]

McLaughlin, J., dissenting.

Appeal from Appellate Term.

Action by Oscar I. Mayer against William W. Penfield. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and MILLER, JJ.

Henry C. Henderson, of New York City, for appellant.
Frank A. Bennett, of New York City, for respondent.

INGRAHAM, P. J. This action was to recover the sum of $2,000 for work, labor, and services done and performed by the plaintiff at the instance of the defendant during the month of November, 1907, and prior thereto, in procuring the sale for the defendant and closing title thereof of certain real estate at Wakefield in the city of New York to and with the New York State Realty & Terminal Company. The complaint alleges that the agreed price and value of the work, labor, and services was $3,000, of which the plaintiff has been paid the sum of $1,000, and judgment is demanded for the balance. There was a question presented on the trial as to whether the plaintiff had been paid $300 in addition to the sum of $1,000, and the jury apparently allowed the defendant for the payment of that sum, rendering a verdict to the plaintiff of $1,700 with interest. From that judgment the defendant appeals; his principal contention being that the contract upon which the cause of action was based was without consideration, and therefore the plaintiff could not enforce it.

---
*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

From the plaintiff's testimony it appeared that he had been employed by the defendant to effect the sale of certain real property. Some time after this employment to July, 1909, the plaintiff submitted this property to the New York State Realty & Terminal Company, which appears to have been a corporation organized for the purpose of acquiring property for the New York Central Railroad Company, and that corporation then entered into negotiations with the plaintiff for its purchase. These went on until November, when a sale of the property was arranged. On November 16, 1907, the defendant executed and delivered to plaintiff an instrument by which the defendant agreed to pay the plaintiff "one thousand dollars in full of services rendered in the disposition of my property at Wakefield and Mt. Vernon to the N. Y. Central Realty & Terminal Co.; as per agreement of November 12th, 1907." When this agreement was entered into, an agreement between the defendant and the New York State Realty & Terminal Company dated on that day had been drawn up and submitted to the purchaser, by which the defendant agreed to sell certain real property therein described for $63,142.50, payable $2,500 on the signing of the contract and $60,642.50 at the time of the delivery of the deed on the 12th day of February. On November 22, 1907, Mr. Ira A. Place, one of the vice presidents of the New York Central Railroad Company, wrote a letter to the general land and tax agent of the company who appeared to be in charge of the New York State Realty & Terminal Company, in which he returned the proposed contract between the Realty & Terminal Company and the defendant for the purchase of this property for $63,142.50, and stating that the execution of this contract had been authorized by the board of directors.

The plaintiff testified that this contract of sale, although dated the 12th of November, 1907, was not actually signed until the 25th of November, 1907, but on the 22d the sale was completed, the purchaser's officers had been authorized to sign the contract, and nothing remained to be done except its formal execution and the payment of the amount agreed to be paid on its execution. The contract was executed on November 25th and the first payment of $2,500 made, and subsequent payments were made on December 15, 1907, of $30,000; February 26, 1908, of $15,000; and March 11, 1908, of $10,000. The plaintiff also testified that on November 12, 1907, after this contract was prepared and submitted to the railroad company, the parties to this action had a dispute about the plaintiff's compensation when defendant finally offered the plaintiff $1,000, for his services, which plaintiff accepted and asked for a writing that the defendant would give him $1,000, and the writing of November 16, 1907, was given by the defendant to the plaintiff to carry out that agreement. The plaintiff also testified that he saw the letter of Mr. Place dated the 22d of November, 1907, on the 23d of November, about 1 o'clock on that day.

The fact, therefore, is established that on the 12th of November, 1907, a contract had been prepared for the sale of the property at a price acceptable to the defendant; that the same had been sub-

stantially accepted by' the purchaser but had not been formally executed; that on the 12th or 16th of November, 1907, the plaintiff and defendant had come to an agreement by which the plaintiff's compensation for his services was to be $1,000 for procuring a purchaser for the property as per this agreement, dated the 12th of November, 1907; and that on the 22d of November, 1907, the purchaser had definitely accepted the contract, and its officers had been actually authorized to execute it. Nothing remained, therefore, except the formal execution of the contract and the payment of the sum to be paid upon its execution. The plaintiff testified that the defendant on the 23d of November requested him to go to the New York Central Railroad Company and see its officers and to induce him to go wrote the letter upon which this claim is based. In that letter the defendant stated to the plaintiff:

"If you will close the matter on Monday next which was to have been closed on November 12, 1907, and secure the first payment of $2,500 on that day, I will give you $3,000 instead of $1,000 as heretofore agreed for your services."

The question as to the reason for the delivery of this writing is disputed; the plaintiff testifying that it was based upon the anxiety of the defendant to get the $2,500 on or before the following Monday. Assuming that the plaintiff's testimony is true, it seems to me clear that the evidence that there was any consideration for this supplemental agreement signed on the 23d of November, 1907, was not sufficient to justify a verdict for the plaintiff. Before that letter was signed, all negotiations had been completed; the sale had been consummated; the purchaser's officers had been authorized to execute a contract the form of which had been agreed upon; the check for the defendant on the execution of the contract had been completed and ready for delivery; and all that was necessary to complete the contract was for the defendant to appear at the office of the company, sign the agreement, and receive his check. The only service that was rendered was the plaintiff's going to the office of the company and there seeing the letter from Mr. Place that the officers of the purchaser had been authorized to sign the contract. The defendant did sign the contract and receive the check which was ready for him on the following Monday. No services that were rendered by the plaintiff after this letter was signed were of the slightest advantage to any one, as everything had been completed and the check was waiting for the defendant. It seems to me clear that this letter of November 23, 1907, was signed under a mistake of both parties or a mistake of the defendant and a suppression of information by the plaintiff as to the existing conditions. The plaintiff then knew, or he knew immediately upon his arrival at the office of the New York Central Railroad Company, that the transaction was completed, and that all the defendant had to do to obtain his money was to go to the office of the purchaser and sign the contract. There was no consideration for the promise, and no services rendered for which the plaintiff was entitled to compensation and which entitled the plaintiff to receive the

extra $2,000, and the verdict therefore was not based on an enforceable promise.

The determination and judgment are therefore reversed, and a new trial ordered, with costs to the appellant in all courts to abide the event.

LAUGHLIN, CLARKE, and MILLER, JJ., concur.

McLAUGHLIN, J. (dissenting). The fact is not disputed that on the 23d of November, 1907, the defendant agreed in writing with the plaintiff as follows:

"If you will close the matter on Monday next, which was to have been closed on November 12, 1907, and secure the first payment of $2,500 on that day, I will give you $3,000, instead of $1,000 as heretofore agreed for your services—$2,000 when $30,000 has been paid to me and $1,000 on final closing of the contract."

The matter was closed on the following Monday and the first payment of $2,500 made. It is not claimed in the answer, nor was such claim made at the trial, or on the argument of the appeal, that the defendant signed this agreement "under a mistake of both parties, or a mistake of the defendant."

As I read the record, the evidence is insufficient to support a finding to that effect. I think there was sufficient consideration to sustain the defendant's promise, and that the judgment of the City Court and the determination of the Appellate Term should be affirmed.